# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| CARLA Y. LEWIS, | : | |
| Plaintiff, | : | |
| | | Case No. 3:14cv00081 |
| vs. | : | |
| | | District Judge Walter Herbert Rice |
| CAROLYN W. COLVIN, | : | Chief Magistrate Judge Sharon L. Ovington |
| Acting Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

## I.  Introduction

Lewis sought financial assistance from the Social Security Administration by applying for Disability Insurance Benefits ("DIB") in November 2010, alleging disability since October 17, 2010.  She alleges disability due to cardiac syncope.[2]  (*PageID#* 212, 259).

After various administrative proceedings, Administrative Law Judge ("ALJ") Mary F. Withum issued a decision concluding that Lewis was not under a "disability"

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

[2] Syncope, or "a sudden brief loss of consciousness, with loss of postural tone," can result from a variety of cardiovascular and noncardiovascular causes and is recurrent in up to 1/3 of the cases.  The Merck Manual, Syncope, 1651-54 (17th ed., Merck Research Laboratories 1999)

within the meaning of the Social Security Act, and was therefore not eligible for DIB. (*PageID*## 76-84).  The ALJ's decision and the resulting denial of benefits later became the final decision of the Social Security Administration.  Such final decisions are subject to judicial review, *see* 42 U.S.C. § 405(g), which Lewis is now due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Response in Opposition (Doc. #10), Plaintiff's Reply (Doc. #11), the administrative record (Doc. ##6, 7), and the record as a whole.

**II.** **Background**

**A.** **Plaintiff's Vocational Profile and Testimony**

On the alleged disability onset date, Lewis was 50 years old, which is defined as an individual "closely approaching advanced age."  *See* 20 C.F.R. § 404.1563.  Lewis has a high school education and previously worked in hospitals as a State Tested Nursing Assistant, although her license became invalid 3 years ago.  (*PageID*## 82, 99).  She estimates the most weight she lifted as a nurse was approximately 170 pounds.  (*PageID*# 100).

Lewis testified that on a typical day she will "[j]ust watch TV, get . . . something to eat, lay down, watch TV."  (*Id.*).  She stated further, "I'll go to church on Wednesday nights, and I go to church on Sundays, when it – when I'm feeling good.  Then I come home, I'll eat, and get something to drink and lay down, and – I lay down most of the time.  I'm just sitting watching TV."  (*PageID*# 102).  She drives herself to the local

grocery store, "maybe once a week," because it is, "around the corner." (*PageID#* 97). She stated she continues to drive, despite her syncope, because "they haven't taken my license or told me that I need to stop driving." (*PageID#* 98). If she needs to travel further, such as to the doctor's office, a family member drives her. (*Id.*). She renewed her license three years prior to the hearing, at which time her condition "hadn't progressed to where it is now." (*Id.*). Lewis estimates the episodes became more frequent just over the past 6-7 months. (*Id.*).

As to her syncope episodes, Lewis testified they "[do not] give me any kind of warning as to when it's going to happen. But I can feel my body getting ready to change, to start to go into that episode." (*PageID#* 101). She testified she knows that because "my body will begin to get heavy and real fatigued. Then I'll go into the part of getting real dizzy and lightheaded. And then I just black out from there." (*Id.*). If her husband or someone else is present when she has an episode, she will go to the hospital. (*Id.*). In 2011, Lewis went to the hospital every few months for the syncope episodes. (*PageID#* 102). When she has a syncope episode she starts shaking and then may pass out. (*PageID#* 104). She stated the shaking can last for about three to five hours, and has recently been happening every three to four days. (*Id.*). Lewis estimated that since 2010 she has been having episodes at least once a month. (*PageID#* 112). After an episode, the symptoms last for approximately four to five days. (*Id.*).

3

### B. **Medical Evidence**

The administrative record contains many medical records plus opinions by Lewis's treating and non-treating medical sources. A detailed description of those records and opinions is unnecessary because the undersigned has reviewed the entire administrative record and because both the ALJ and Plaintiff's counsel have accurately summarized the relevant records concerning Lewis's physical and mental impairments with citations to specific evidence. The Commissioner likewise defers to the ALJ's factual recitation.

### III. **Administrative Review**

#### A. **"Disability" Defined**

The Social Security Administration provides DIB to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1)(D). The term "disability" – as defined by the Social Security Act – has specialized meaning of limited scope. It encompasses only those who suffer from a medically determinable physical or mental impairment severe enough to prevent them from engaging in substantial gainful activity. *See* 42 U.S.C. § 423(d)(1)(A); *see also Bowen*, 476 U.S. at 469-70.

A DIB applicant bears the ultimate burden of establishing that he or she is under a "disability." *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

B. <u>**Social Security Regulations**</u>

Administrative regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence. *See PageID##* 68-70; *see also* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any Step terminates the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review answers five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can he perform his past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can he or she perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

C. <u>**ALJ Withum's Decision**</u>

Plaintiff last met the insured status requirements of the Social Security Act through December 31, 2012. (*PageID#* 78).

At Step 2 of the sequential evaluation, ALJ Withum concluded that Lewis has the severe impairments of hypotension and neurocardiogenic syncope. (*PageID#* 78).

The ALJ concluded at Step 3 that Lewis did not have an impairment or combination of impairments that met or equaled one of the Listings. (*Id.*).

At Step 4, the ALJ evaluated Lewis's residual functional capacity ("RFC") and found the following:

> [T]he claimant has not presented credible evidence that she lacks the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) with additional limitations related to her neurocardiogenic syncope and orthostatic hypertension. The claimant cannot climb ladders, ropes, or scaffolding, though she may occasionally climb ramps and/or stairs, balance and/or stoop. The claimant must also avoid all exposure to unprotected heights.

(*PageID#* 79). The ALJ concluded at Step 4 that Lewis was capable of performing past relevant work as a certified nurse's assistant. (*PageID#* 82). The ALJ also found, in the alternative, that based on testimony from the VE – as well as considering Plaintiff's age, education, work experience, and RFC – Lewis was also capable of performing a significant number of jobs in the national economy. (*PageID#* 83).

The ALJ's findings throughout her sequential evaluation led her to conclude that Lewis was not under a disability and thus not eligible for DIB. (*Id.*).

**IV.** **Judicial Review**

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or

disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . ." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry, reviewing for correctness the ALJ's legal criteria, may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

V.   **Discussion**

   A.   **Plaintiff's Contentions**

Lewis contends the ALJ erred by rejecting the opinion of her treating cardiologist, Dr. Thomas Ruff, and finding that she was not credible. (Doc. #8, *PageID*## 1743-60). Lewis notes that Dr. Ruff not only witnessed her experiencing one of her syncope episodes, but based his diagnosis on the results of a tilt table test she underwent at the Cleveland Clinic in 2003.

The Commissioner argues that Dr. Ruff's opinion "was not well supported by medically acceptable clinical and laboratory diagnostic techniques and was also inconsistent with other substantial evidence." (Doc. #10, *PageID*# 1768). The Commissioner contends the ALJ properly evaluated the credibility of Plaintiff's subjective complaints. (*Id.*, *PageID*# 1770). Accordingly, the Commissioner argues the ALJ's evaluation is supported by substantial evidence and should be affirmed. (Doc. #10, *PageID*# 1773).

   B.   **Medical Source Opinions**

1.

**Treating Medical Sources**

The treating physician rule, when applicable, requires the ALJ to place controlling weight on a treating physician's or treating psychologist's opinion rather than favoring the opinion of a nonexamining medical advisor or a one-time examining physician or

8

psychologist or a medical advisor who testified before the ALJ. *Blakley,* 581 F.3d at 406 (6th Cir. 2009); *see Wilson*, 378 F.3d at 544 (6th Cir. 2004). A treating physician's opinion is given controlling weight only if it is both well supported by medically acceptable data and if it is not inconsistent with other substantial evidence of record. (*Id.*).

"If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of the examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 581 F.3d at 406 (citing *Wilson*, 378 F.3d at 544).

More weight is generally given to the opinions of examining medical sources than is given to the opinions of non-examining medical sources. *See* 20 C.F.R. § 404.1527(c)(1)[3]. Yet the opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight. This occurs because the Commissioner views such medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p.

---

[3] 20 C.F.R. §§ 404.1527 and 416.927 were amended effective March 26, 2012. The provisions governing the weight to be afforded a medical opinion were previously found at 20 C.F.R. §§ 404.1527(d) and 416.927(d).

9

Consequently, opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization.  *See* 20 C.F.R. § 404.927(c), (e); *see also* Ruling 96-6p at *2-*3.

### 2.
### Non-Treating Medical Sources

The Commissioner views non-treating medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act."  Social Security Ruling 96-6p, 1996 WL 374180 at *2.  Yet the Regulations do not permit an ALJ to automatically accept (or reject) the opinions of a non-treating medical source.  *See id.* at *2-*3.  The Regulations explain, "In deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive." 20 C.F.R. § 404.1527(b).  To fulfill this promise, the Regulations require ALJs to evaluate non-treating medical source opinions under the factors set forth in § 404.1527(d) including, at a minium, the factors of supportability, consistency, and specialization.  *See* 20 C.F.R. § 404.1527(e); *see also* Ruling 96-6p at *2-*3.

C.      **Analysis**

Plaintiff's treating cardiologist, Dr. Thomas Ruff, completed interrogatories on June 22, 2012.  He noted he was a cardiologist, he first saw Lewis in 2008, and last saw

her on March 29, 2012.  (Doc. #7-1, *PageID#* 1346).  He treated Lewis for shortness of breath; fatigue/malaise; syncope and collapse; and hyperlipidemia.  (Doc. #7-1, *PageID#* 1347). She had a "[h]istory of neurocardiogenic syncope, which has not worsened since her last visit," but also "has not improved . . . ."  He stated this was a legitimate diagnosis that did not usually cause permanent limitations.  (*Id.*).  Lewis was having the episodes more frequently.  (*Id.*, *PageID#* 1348).  After she suffers from an episode, Lewis "feels very week and fatigued . . . ."  (*Id.*).  Dr. Ruff opined that Lewis would miss work as a result of these episodes, but "not always" and that "it depends on [her] attitude [and] the way [she] feel[s]."  (*Id.*).  Dr. Ruff noted that, on average, he anticipated Lewis's impairments or treatment to cause her to be absent from work "[a]bout three times a month."

Despite noting that Lewis experienced a syncope episode in his office, the ALJ rejected Dr. Ruff's statements, finding that he "references no objective medical evidence or diagnostic studies to support the endorsed limitations and symptoms," and that "the statement is inconsistent with [Lewis's] own description of active participation in many activities of daily living . . . ."  (Doc. #7-1, *PageID#* 81).  The ALJ also stated she was "not persuaded by this statement," because "the form contains two different handwriting styles with correspondingly different limitations and conditions."  (*Id.*).  For the reasons that follow, the Court finds the ALJ's decision is not supported by substantial evidence and must be reversed.

11

The ALJ first erred by rejecting Dr. Ruff's opinion on the basis that there are no objective findings supporting it. The record indicates that Lewis had a positive tilt table test in 2003, *PageID#* 374, 377, and Dr. Ruff relied on such results in June 2005 when diagnosing Lewis with neurocardiogenic syncope. (*PageID#* 718-19). Dr. Ruff also found that Lewis's symptoms were consistent with neurocardiogenic syncope. (*Id.*). As noted by Lewis, the tilt table test is one of the diagnostic tests for neurocardiogenic syncope. *See* Cleveland Clinic, Syncope, http://my.clevelandclinic.org/heart/disorders/electric/syncope.aspx. Accordingly, the ALJ's finding that Dr. Ruff's opinion is not based on any objective medical evidence is inaccurate and not supported by substantial evidence.

Also particularly troublesome with the ALJ's decision in this case is the fact that she relies on her own handwriting analysis of Dr. Ruff's interrogatories to somehow infer that his answers are unreliable based on the possibility that he may not have personally written the answer to each question on the form. (*PageID#* 81). Apparently the ALJ therefore believes that Dr. Ruff signed a substantially incomplete document and then another individual filled in the remaining portions without his approval or knowledge. (*Id.*). Such a finding, however, is based on nothing more than mere speculation by the ALJ. (*Id.*). Moreover, the possibility that Dr. Ruff did not personally handwrite all the answers is, absent some evidence the documents were altered or fraudulent, of little significance. There is nothing to suggest Dr. Ruff is required to personally handwrite his

answers. Just as he could have submitted typed responses, it is unclear why he could not also have allowed a staff member or other person to dictate his reply. Likewise, there is nothing to suggest that Dr. Ruff did not actually sign the interrogatories or that any other reason exists to question the document's authenticity. Accordingly, it was error for the ALJ to reject Dr. Ruff's opinion based on such flawed reasoning. Moreover, if the ALJ was so sincerely concerned about the legitimacy of the document or any perceived inconsistencies contained therein, she could have – as Plaintiff correctly suggests – recontacted Dr. Ruff, as permitted under 20 C.F.R. § 404.1520b, for further clarification. Alternatively, the ALJ could have also raised such concerns at the hearing and allowed Lewis the opportunity to obtain the information sought.

Even assuming the ALJ somehow correctly rejected the opinion of Dr. Ruff, she nonetheless also erred by failing to properly weigh the opinions of the non-examining state agency reviewers. An ALJ is not permitted to automatically accept the opinions of non-examining State agency reviewers. Instead, the Regulations carefully delineate other factors pertinent to the ALJ's evaluation, reiterating three times the requirement that those factors apply to the evaluation of non-treating medical sources. *See* 20 C.F.R. § 404.1527(d) ("we consider all of the following factors in deciding the weight to give any medical opinion . . ."); *see also* 20 C.F.R. § 404.1527(f)(ii) (factors apply to opinions of state agency consultants or other program physicians); 20 C.F.R. § 404.1527(f)(iii) (same as to medical experts' opinions); Social Sec. Ruling 96-6p, 1996 WL 374180 at *2

13

(same).  The ALJ's decision fails to provide such an analysis in this case and therefore must be reversed on this basis as well.

Accordingly, for all the above reasons, Lewis's Statement of Errors is well taken.[4]

## VI. <u>Remand is Warranted</u>

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits.  Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding.  *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming, and because the evidence of a disability is not strong while contrary evidence is weak.  *See Faucher*, 17 F.3d at 176.

Lewis, however, is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of § 405(g), due to the problems identified above. On remand, the ALJ should be directed to: (1) re-evaluate the medical

---

[4] In light of this conclusion and the resulting need to remand this case, an in-depth analysis of Lewis's remaining challenge to the ALJ's decision is unwarranted.

source opinions of record under the legal criteria set forth in the Commissioner's Regulations, Rulings, and as required by case law; and (2) determine anew whether Lewis was under a disability and thus eligible for DIB during the period in question.

Accordingly, the case should be remanded to the Commissioner and the ALJ for further proceedings consistent with this Report and Recommendations.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Carla Lewis was under a "disability" within the meaning of the Social Security Act;

3. This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Report; and

4. The case be terminated on the docket of this Court.


December 29, 2014

                                              s/Sharon L. Ovington
                                                  Sharon L. Ovington
                                        Chief United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).